THE STATE, EX REL. KRABACH, *v.* FERGUSON, AUDITOR.

[Cite as State, ex rel. Krabach, v. Ferguson
(1976), 46 Ohio St. 2d 168.]

(No. 75-1130—Decided May 5, 1976.)

Mr. *William J. Brown*, attorney general, and *Mr. George E. Lord*, for relator.

*Mr. William J. Brown*, attorney general, *Mr. Larry R. Zingarelli* and *Mr. David H. Beaver*, for respondent.

Stern, J. The question presented in this case concerns the duties of the Auditor of the state of Ohio under R. C. 115.35. That statute provides:

"The Auditor of State shall examine each voucher presented to him, or claim for salary of an officer or employee of the state, or per diem and transportation of the commands of the national guard, or judgment against the state pursuant to Chapter 2743 of the Revised Code, and if he

finds it a valid claim against the state and legally due and that there is money in the state treasury appropriated to pay it, and that all requirements of law have been complied with, he shall issue a warrant on the Treasurer of State for the amount found due, and file and preserve the invoice in his office. He shall draw no warrant on the Treasurer of State for any claim unless he finds it legal and that there is money in the treasury which has been appropriated to pay it."

The auditor, respondent in this case, cites as a proposition of law that his duties under R. C. 115.35 are discretionary in nature and that generally mandamus will not lie to control the exercise of discretion. That proposition is clearly erroneous. This court has often issued writs of mandamus ordering the auditor to pay legal claims. *State, ex rel. Clifford, v. Cloud* (1966), 7 Ohio St. 2d 55, 218 N. E. 2d 605; *State, ex rel. Haines, v. Rhodes* (1958), 168 Ohio St. 165, 151 N. E. 2d 716; *State, ex rel. Allen, v. Ferguson* (1951), 155 Ohio St. 26, 97 N. E. 2d 660; *State, ex rel. Witten, v. Ferguson* (1947), 148 Ohio St. 702, 76 N. E. 2d 886; *State, ex rel. Glander, v. Ferguson* (1947), 148 Ohio St. 581, 76 N. E. 2d 373; *State, ex rel. Matheney, v. Ferguson* (1943), 141 Ohio St. 61, 46 N. E. 2d 768; *State, ex rel. McCaw, v. Ferguson* (1941), 139 Ohio St. 1, 38 N. E. 2d 68; *State, ex rel. Riley, v. Oglevee* (1881), 36 Ohio St. 324. The auditor has no discretion to refuse payment of valid and legal claims when there is money in the state treasury appropriated to pay for them. His duty is simply to draw warrants for valid claims, and to refuse to draw warrants for invalid or illegal ones, or those for which there is no money appropriated in the treasury. The auditor must necessarily make findings as to the legality of claims against the state, but in doing so he must rely upon law, and not discretion. This court stated the applicable principles in *State, ex rel. S. Monroe & Son Co., v. Tracy* (1935), 129 Ohio St. 550, 567-68, 196 N. E. 650:

"Outside of the courts, the Auditor of State, the officer against whom this action is directed, has the last word

in so far as the legality of state contracts is concerned."

The court then quoted G. C. 243, which differs from R. C. 115.35 only in an additional phrase not relevant here, and continued:

"Let it not be understood that this section renders the Auditor of State entirely immune to the extraordinary writ of mandamus. If a voucher representing a valid claim against the state is presented to him, concerning which all the requirements of law have been complied with and it is legally due and there is money in the state treasury which has been duly appropriated to pay it, then the law specially enjoins on him as a duty resulting from his office the issurance of a warrant on the Treasurer of State in payment of the claim, and the claimant is entitled to a writ of mandamus to secure his warrant if it is refused; but if the claim does not meet all these requirements, it is just as much his duty to refuse the warrant.

"Where a claim is questionable, the dictates of good sense and good business judgment impliedly at least demand that he refer it to the law department of the state for opinion, and be governed thereby."

This case does raise an issue as to the auditor's discretion, but only as to his discretion to require proof of the legality of claims submitted to him. The auditor has a statutory responsibility to make a finding of the legality of a claim before he draws a warrant for payment and that finding must be based upon proofs available to the auditor. The sufficiency of those proofs will depend upon the circumstances of each individual case, and the auditor must necessarily have authority to require that the factual proof be relevant to the case at hand.

This court has previously held that the auditor is not bound by determinations of legality made by other state officers, such as prosecuting attorneys, the warden of the penitentiary (*State, ex rel. Commrs., v. Guilbert* [1907], 77 Ohio St. 333, 83 N. E. 80), or the director of the state highway department (*State, ex rel. S. Monroe & Son Co., v. Tracy, supra*). In order to effectively carry out his

responsibility to safeguard public funds, the auditor also cannot be conclusively bound by the assertions of the Director of Administrative Services, where there are valid grounds to question the legality of the claims. The auditor may not refuse to issue his warrant because he questions matters which were conclusively determined by a valid state contract, at least in the absence of fraud, mistake, or collusion (*State, ex rel. M. E. Murphy Co.,* v. *Donahey* [1918], 98 Ohio St. 442, 121 N. E. 645), but he may require factual proof which is appropriate to demonstrate with a high degree of certainty that each claim is legal and that all requirements of law have been complied with, and mandamus will not lie to require him to issue warrants for claims which are not clearly legal. See *State, ex rel. Leis,* v. *Ferguson* (1948), 149 Ohio St. 555, 80 N. E. 2d 118. Judge Myers, concurring in *State, ex rel. Duffy,* v. *Ferguson* (1937), 132 Ohio St. 524, 526-27, 9 N. E. 2d 290, very properly commented that he did "not subscribe to any inference that a mere certification by a state official that a certain amount of money is due an individual will foreclose the auditor from making an investigation if he has ample reason therefor. That is his duty under the statute."

The precise issues presented here are whether the auditor acted properly in refusing to draw warrants for gasoline charged to state vehicles with cover plates, and whether he acted properly in continuing to refuse to draw those warrants after the relator offered to provide a blind list of cover plates, not broken down by state department and not showing the state government plate number corresponding to each cover plate number.

The auditor's position in the case of vehicles with cover plates is that he cannot determine whether gasoline and oil purchased with a state credit card were lawfully used in the state-owned vehicle for which the card was issued, or were unlawfully used in another, privately-owned vehicle. The rationale of this position becomes clear after an examination of the stipulated receipt slip. Whenever a state credit card is used to purchase gas or oil, the filling

station attendant fills out the charge slip and enters thereon the amount of the purchase and the license plate number of the vehicle. The attendant mechanically transfers the account number, the state government plate number, and other information from the credit card onto the slip. Thus, when the state vehicle does not have cover plates, the license plate number from the credit card should correspond to the number copied by the attendant from the license plate on the vehicle. On the other hand, when the vehicle has cover plates, those numbers will differ. The auditor contends that he cannot be sure the purchase was legally made for a state vehicle unless he has a list of the cover plates.

That contention appears well founded. It would be simple enough for any state credit card holder to use the state card for private purchases, if the auditor were forced to draw warrants for all purchases charged to vehicles with private plates. The only way the auditor can perform his statutory duty to determine whether these purchases are legal claims against the state is by checking the license numbers written on the slips against a list of the cover plates.

The remaining question is whether the auditor would have sufficient information if given the blind list of cover plates not broken down by state departments and not matched with the corresponding state government license plate numbers. By means of a blind list, the auditor could determine whether a purchase was made for a state vehicle. He could not, however, determine whether the purchase was made for the proper state vehicle. In other words, he could not determine whether a purchase for a state vehicle with cover plates had been made using the proper card nor could he determine whether it was charged to the proper state department. If the auditor had only a blind list, any state credit card could be used to purchase gas or oil for any state vehicle with cover plates, since the auditor would have no means of knowing a particular cover plate in fact "covered" the state government plate recorded on the charge slip. R. C. 115.45 provides that:

"All service rendered and property transferred from one institution, department, improvement, or public service industry to another shall be paid for at its full value. No institution, department, improvement, or public service industry shall receive financial benefit from an appropriation made or fund created for the support of another.
* * *"

Plainly, the use of a state credit card to purchase gasoline for the benefit of one department, at the expense of another, would be in contravention of R. C. 115.45.

R. C. 115.35 directs that the auditor find "that all requirements of law have been complied with" and that he draw no warrant unless he finds it legal and that there is money in the treasury which has been appropriated to pay it. The auditor cannot find with certainty that the requirements of R. C. 115.45 have been complied with unless he is also certain that the claim was actually for the benefit of the department named thereon. Since in the case of these credit card purchases, a side-by-side list of cover plate numbers and of the corresponding state government plate numbers is the only apparent means by which the auditor could determine that purchases of gasoline were actually charged to the proper department, the auditor was within his rights to require that this information be provided before he was willing to find that all the requirements of law had been met and that the warrant should therefore be drawn.

It might be argued that there is little motive for use of a state credit card by the wrong department, and that the availability of the list to the auditor might not in any case prevent determined efforts to shift one department's expenses to another. Nevertheless, the information required by the auditor is directly related to his duty to find that these claims are legal, since an examination of the slips themselves does not allow a finding that they represent purchases for state use, or purchases for the benefit of the department named on the slips. The auditor's disinclination to find these claims legal without further proofs which are readily available consequently has a reasonable basis and we cannot say that it was an abuse of his authority or of the

limited nature of his discretion to request these proofs.

It is readily apparent that some of the real parties in interest in this controversy are not involved in this suit. The commercial oil companies which honored the state credit card have unwittingly become enmeshed in this dispute over state contracting and automobile licensing procedures. Certainly it would have been preferable for all concerned had the state agencies resolved in some other way their differences regarding procedures for validating claims and exchanging information. However, that is not the case at bar. For the reasons given above, we do not find that the auditor exceeded or abused his authority by declining to find these claims to be legal without further proof.

*Writ denied.*

O'NEILL, C. J., HERBERT, CORRIGAN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.