LINDLEY, APPELLEE, *v.* FERGUSON, AUDITOR, APPELLANT.

[Cite as Lindley v. Ferguson (1976), 53 Ohio App. 2d 203.]

(No. 76AP-415—Decided October 19, 1976.)

*Mr. William J. Brown,* attorney general, *Mr. Ronald B. Noga* and *Mr. John C. Duffy, Jr.,* for appellee.

*Mr. William J. Brown,* attorney general, and *Mr. Patrick V. Kerrigan,* for appellant.

WHITESIDE, J. Defendant appeals from a judgment of the Franklin County Court of Common Pleas granting a

permanent injunction enjoining defendant "from serving any subpoenas or seeking to enforce any previously served subpoenas requiring the plaintiff, Edgar L. Lindley, Tax Commissioner of Ohio, to produce for the defendant any application or related affidavits for refund of any Ohio tax which the plaintiff is authorized to administer." By the judgment of the trial court, defendant was further "permanently enjoined from issuing any further subpoenas to the plaintiff for applications for refund of taxes and from delaying the issuance of any warrant for refund of taxes upon proper certification by the tax commissioner."

In support of his appeal, defendant has raised two assignments of error, as follows:

"1. The trial court was in error in holding that the tax commissioner of Ohio could refuse the auditor of state access to records and documents in the possession of the tax commissioner which purportedly support vouchers forwarded to the auditor regarding refunds of state taxes."

"2. Where records and documents are kept by the tax commissioner of Ohio and utilized by him to determine refunds of motor vehicle fuel taxes, in compliance with chapter 5735., Ohio Revised Code, such records and documents are 'public records' within the meaning of section 149.43, Ohio Revised Code, and it was error for the trial court to grant an injunction denying access to said records."

From the record, the briefs, and the oral arguments of counsel, it appears that we are here concerned with the right of the Auditor with respect to a "pre-audit," rather than a "post-audit," as to motor vehicle fuel tax refunds. By "pre-audit" is meant an "audit" to determine whether or not the refund should be made by the Auditor in performance of his duties under R. C. 115.35, rather than his duties under R. C. Chapter 117 (creating the Bureau of Inspection and Supervision of Public Offices) which would constitute a "post-audit."

Accordingly, the issue before us is the extent, if any, of the authority of the Auditor to make an investigation and to issue subpoenas on the Tax Commissioner in con-

nection therewith in order to determine whether or not a voucher for the payment of a motor vehicle fuel tax refund determined to be due by the Tax Commissioner constitutes "a valid claim against the state and legally due * * * and that all requirements of law have been complied with."

The Auditor has no discretion as to whether or not to pay motor vehicle fuel tax refunds determined by the Tax Commissioner to be due to a claimant. Rather, the Auditor's determination is one of the legality of the refund, *State, ex rel, Krabach, v. Ferguson* (1976), 46 Ohio St. 2d 168, 171. As stated in the opinion by Justice Stern:

"The auditor has no discretion to refuse payment of valid and legal claims when there is money in the state treasury appropriated to pay for them. His duty is simply to draw warrants for valid claims, and to refuse to draw warrants for invalid or illegal ones, or those for which there is no money appropriated in the treasury. The auditor must necessarily make findings as to the legality of claims against the state, but in doing so he must rely upon law, and not discretion."

This does not mean that the Auditor must automatically pay without question all motor vehicle fuel refunds where a voucher is presented to him. As stated in the first paragraph of the syllabus of *Krabach*:

"The Auditor of State has the authority and duty to investigate or require further proof of a claim presented to him, where ample reason exists to question the legality of the claim. (R. C. 115.35 construed.)"

This case, however, does not present the issue as to the nature or reasonableness of the further proof that the Auditor may require but, rather, presents the question of whether the Auditor may make an independent investigation and subpoena information in determining whether or not to pay a claim when a voucher has been presented to him in accordance with R. C. 115.35. As quoted above, however, the statute very clearly states that the Auditor's duty is to "examine each voucher presented to him." Nowhere in R. C. 115.35 is any power of investigation or sub-

poena conferred upon the Auditor in connection with determining to pay claims.

Rather, it is clear from R. C. 115.35, as interpreted by *Krabach*, that the function of the Auditor is to determine whether or not the claim is a valid and legal claim and to refuse to pay a claim until sufficient proof of the validity and legality of the claim has been presented to him. This case does not present the issues presented in *Krabach*, where the Auditor quite properly refused to issue a warrant for the claims, rather than to embark upon a venture of his own to investigate the claims and to subpoena records and to conduct hearings. No such procedure is contemplated by R. C. 115.35. Rather, as indicated by the second paragraph of the syllabus of *Krabach*, the Auditor should refuse to issue a warrant where he "lacks sufficient information to determine" the legality of the claim for refund. He may properly refuse to issue a warrant when lacking sufficient information to make the determination of legality, but is not empowered to embark upon an investigation using a subpoena power for that purpose.

Obviously, there is no need for the Auditor to issue subpoenas and and make investigations since he may accomplish the purpose of protecting the public simply by refusing to issue a warrant until sufficient information is furnished. The Auditor is empowered to prescribe, so long as reasonable, what information and documentation must accompany a voucher presented for payment to enable him to make the necessary determination of legality. However, his power to require information is not unlimited, and he ordinarily would not need confidential information for this purpose.

The Auditor does have investigatory and subpoena powers with respect to "post-audits" as conferred by R. C. 117.09. It is not necessary in this case to consider or determine the nature or extent of such power with respect to motor vehicle fuel tax refunds since it is not presented by this case.

R. C. 5735.13, 5735.14, 5735.141, and 5735.142 each provide for the refunding of motor vehicle fuel taxes un-

der certain circumstances, as does R. C. 5735.17. Each of these sections provides substantially the same procedure as R. C. 5735.14, which provides, in part:

"Such person shall file with the tax commissioner an application for refund * * *. After consideration of such application and statement, the commissioner shall determine the amount of refund due, and * * * shall certify such amount to the auditor of state and treasurer of state. The auditor of state shall draw a warrant for such certified amount on the treasurer of state in favor of the person claiming such refund."

Each section essentially requires an application for refund, a determination by the Tax Commissioner of the amount of refund, if any, due, certification by the Tax Commissioner to the Auditor of State of the amount of refund determined by the Tax Commissioner to be due, and the issuance of a warrant by the Auditor for the amount certified by the Tax Commissioner as being due as a refund. Obviously, the Auditor cannot substitute his judgment for that of the Tax Commissioner as a determination of the amount of refund due. As indicated by *Krabach*, there is no discretion in the Auditor as to the payment of claims lawfully due. The only possible function of the Auditor in connection with such refunds is to determine whether or not the refund is lawfully due. Accordingly, it would not be unreasonbale for the Auditor to require that the certification by the Tax Commissioner include the Tax Commissioner's factual findings and determination upon which the certification for refund is predicated.

It does not appear that the injunction granted by the trial court prevents the Auditor from requiring reasonable documentation to be submitted with the voucher as a prerequisite for payment. The injunction only prevents the Auditor from exceeding his statutory powers with respect to making payment of motor vehicle fuel tax refunds. The Auditor has no authority to act in an administrative appellate capacity to review the factual determinations made by the Tax Commissioner in connec-

tion with motor vehicle fuel tax refunds. The Auditor, however, may require that those factual determinations made by the Tax Commissioner be included in the statutory certification so that the auditor will be in the position to determine the legality of the refund, which he is required to do by R. C. 115.35. The first assignment of error is not is not well taken.

In support of the second assignment of error, defendant relies upon R. C. 149.43. We find nothing in the judgment of the trial court which is inconsistent with R. C. 149.43. That section deals with the right to inspect public records. This case deals with the power of the Auditor of State to subpoena records under certain circumstances. Obviously, in subpoenaing records, the Auditor of State is not exercising the right of public inspection pursuant to R. C. 149.43.

If there be records of the Tax Commissioner which are open to inspection pursuant to R. C. 149.43, quite clearly employees of the Auditor, as well as any member of the general public, may inspect those records. However, that is not an issue directly presented by this case since the Auditor is attempting to exercise the power of subpoena in his official capacity, not the citizen's right of public inspection of public records.

R. C. 149.43 requires a public officer to permit the inspection of his public records other than those which are made confidential by law. To some degree, the records of the department of taxation have been made confidential by R. C. 5703.21, which provides, as follows:

"No agent of the department of taxation, except in his report to the department or when called on to testify in any court or proceeding, shall divulge any information acquired by him as to the transactions, property, or business of any company, firm, corporation, person, association, partnership, or public utility while acting or claiming to act under orders of the department. Whoever violates this section shall thereafter be disqualified from acting as agent or in any other capacity under the appointment or employment of the department."

It is neither necessary nor appropriate to determine which records of the Tax Commission are made confidential by R. C. 5703.21. First, as indicated above, R. C. 149.-43 confers rights upon citizens, not powers upon public officers, such as the Auditor of State. The power of subpoena is entirely separate and distinct from a citizen's right of inspection of public records. Secondly, there is no clear evidence in this case revealing which records, if any, involved have been made confidential by R. C. 5703.-21, and which records, if any, have not. There is no evidentiary basis in the record for the clear application of R. C. 149.43 when read in conjunction with R. C. 5703.21. Accordingly, the second assignment of error is not well taken.

No other issue has been raised in support of the defendant as a basis for finding any error in the judgment of the Court of Common Pleas.

Accordingly, the two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

HOLMES and McCORMAC, JJ., concur.

McCORMAC, J., concurring. I concur in the result of this case. However, as expressed in my dissenting opinion in *Collins* v. *Ferguson*, 75AP-475, I emphatically believe the law permits the Auditor to examine supporting documents for vouchers at the appropriate time, which is probably the post-audit period under the Bureau of Inspection and Supervision of Public Officers.