CONN CONSTRUCTION COMPANY ET AL., APPELLANTS AND CROSS-APPELLEES, *v.* OHIO DEPARTMENT OF TRANSPORTATION, APPELLEE AND CROSS-APPELLANT.

(No. 82AP-687—Decided
December 13, 1983.)

*Messrs. Knepper, White, Arter &
Hadden, Mr. Roger L. Sabo* and *Mr.
John P. Gartland,* for appellants and
cross-appellees.
*Mr. Anthony J. Celebrezze, Jr.,* at-
torney general, *Mr. Warren M. Enders*
and *Ms. Nancy J. Miller,* for appellee
and cross-appellant.

BROGAN, J. The Ulysses S. Grant
Bridge is a cable suspension bridge over
the Ohio River, constructed in 1926 and
1927, which links Portsmouth, Ohio and
Greenup County, Kentucky. The first
major repair of the bridge consisted of
recabling, performed in 1939 by the
American Bridge Co.

On October 19, 1977, the Ohio De-
partment of Transportation (hereinafter
"ODOT") awarded Conn Construction
Company (hereinafter "Conn") a con-
tract for rehabilitation of the bridge.
The termination of the contract by
ODOT gives rise to this appeal. Under
the contract, work was divided into
"reference items" for which the con-
tractor was to submit unit prices at
estimated quantities. Based on the unit
prices submitted by Conn, the contract
was in a total amount of $2,965,731.

In April 1978, Conn began structural repairs. Conn began unwrapping and rewrapping the steel suspension cables in May, and by June, unexpected breaks were discovered in the main cables. At that time, ODOT began making changes in the contract, requesting partial performance of certain reference items and non-performance of others. ODOT also made changes on the contract respecting further expenses.

ODOT eventually determined that the suspension cables were in such deteriorated condition as to require termination of the contract and reevaluation of the bridge repair. Due to unexpected complications, in July 1978, ODOT contracted with the American Bridge Company to continue recabling work. In September, the Director of ODOT terminated the contract with Conn, pursuant to R.C. 5525.14 and Sections 108.031 and 109.05 of the Construction and Material Specifications, and ordered Conn to cease all work immediately.

Negotiations occurred for the next year and one-half concerning Conn's claim for payment for work performed and actual costs incurred prior to termination. On August 29, 1980, Conn filed a complaint in the Court of Claims to recover costs alleged to have been incurred, but not recognized by ODOT. This case is before the court upon Conn's appeal from that portion of the Court of Claims decision denying the recovery requested. ODOT filed a cross-appeal from the partial recovery awarded to Conn.

Conn's first assignment of error involves two principal contentions; the first of which is that the trial court erred as a matter of law in its appointment of a referee in that the person appointed lacked the qualifications required by statute.

Two procedures existed for the appointment of referees by the Court of Claims. First, R.C. 2743.03(C)(2) provided that the court, *sua sponte,* may appoint a referee in accordance with the criteria of Civ. R. 53. Second, R.C. 153.12 (C) provides that the parties may request the Court of Claims to appoint a referee or panel of referees in accordance with R.C. 2743.03(C)(2).

R.C. 2743.03(C)(2) further provided: "* * * The referees need not be attorneys, but must be persons knowledgeable about construction contract law. Knowledge of construction contract law may be evidenced by membership on the construction industry panel of the American arbitration association. No person shall serve as a referee if that person has been employed by an affected state agency or a contractor or subcontractor involved in the dispute at any time in the preceding five years. * * *"

On January 29, 1982, Conn filed an application requesting that a referee be appointed to hear the evidence. By order of March 5, 1982, the Court of Claims granted Conn's application, naming attorney John Gilchrist as referee. On that same day, Conn filed a motion to vacate and/or set aside the appointment on the ground that the appointment did not meet the statutory qualifications. Following a hearing, the Court of Claims, by order of March 8, 1982, concluded, *inter alia,* that Gilchrist was qualified to be a referee in this matter, and Conn's motion to vacate the appointment was overruled.

Conn's argument involves two objections concerning attorney Gilchrist's qualifications. First, Conn asserts that, because Gilchrist was employed by the State Auditor from January 1977 to November 1981, he was thereby "[previously] employed by an affected state agency" within the prohibition of R.C. 2743.03(C)(2). Second, Conn contends that the referee was not "knowledgeable in construction contract law" as required by R.C. 2743.03(C)(2), and,

therefore, was not qualified to serve as referee.

Regarding Conn's initial assertion, the Court of Claims has exclusive original jurisdiction of civil actions against the state which are permitted by waiver of immunity. See R.C. 2743.03 (A); 2743.02. When the Court of Claims renders a judgment against the state, R.C. 2743.19(A) requires that the court:

"* * * [D]etermine and specify in the judgment the department, office, commission, board, agency, institution, or other instrumentality of the state against which a determination of liability has been made."

R.C. 2743.19(C)(1) through (7) then provide the manner in which judgments awarded by the Court of Claims must be processed through various state departments for payment. This is a process in which the Auditor of State is necessarily involved.

R.C. 115.35 provides that the Auditor of State shall examine each judgment from the Court of Claims:

"* * * [A]nd if he finds it a valid claim against the state and legally due and that there is money in the state treasury appropriated to pay it, and that all requirements of law have been complied with, he shall issue a warrant on the treasurer of state for the amount found due, and file and preserve the invoice in his office. * * *"

Relying on this statutory duty and *State, ex rel. Krabach,* v. *Ferguson* (1976), 46 Ohio St. 2d 168 [75 O.O.2d 207], Conn contends that, because the State Auditor's office has a duty to investigate claims and require proof of their validity, that it was "directly" involved in negotiation and payment of claims to Conn, and was therefore involved in the dispute as an "affected state agency."

However, it has been held that the Auditor of State has no power under R.C. 115.35 to conduct an independent investigation and to subpoena informa-

tion regarding a claim presented. *Lindley* v. *Ferguson* (1976), 53 Ohio App. 2d 203 [7 O.O.3d 276]. Further, the duty to investigate, in *Krabach, supra,* was conditioned on the existence of ample reason to question the legality of a claim. Since the Auditor's statutory obligation to determine the legality of vouchers under R.C. 115.35 is accomplished merely by an examination of the voucher itself, Conn's argument concerning the Auditor's involvement in the dispute *sub judice* is tenuous. The involvement of the Auditor's office in the claims process of government cannot impute an improper relationship with either of the parties to this lawsuit. There is no suggestion that the purely ministerial functions performed by state auditors could have given rise to the conflicts of interest or biases which R.C. 2743.03(C)(2) was aimed at preventing. Since the Auditor's office was not an "affected state agency * * * involved in the dispute" within the meaning of the statute, it was not error for the court to appoint a former employee of that office as referee in this case.

Regarding Conn's assertion that the referee was not "knowledgeable about construction contract law," we note that the usual qualification for persons to be appointed referees is that they must be "attorneys at law admitted to practice in this state." Civ. R. 53(A). Additionally, R.C. 2743.03(C)(2) provided that referees for the Court of Claims need not be attorneys, provided they are persons knowledgeable about construction contract law. Given the specified nature of cases heard by the Court of Claims, this provision recognized that individuals may have extensive knowledge of construction contract law gained outside of a formal legal education.

In any event, as a licensed attorney in this state, Gilchrist was qualified under Civ. R. 53(A) to be appointed as a referee. R.C. 2743.03(D) in part provides:

"The Rules of Civil Procedure shall govern practice and procedure in all actions in the court, except insofar as inconsistent with this chapter. * * *"

R.C. Chapter 2743 is not inconsistent with Civ. R. 53 as to the qualifications of referees.

Moreover, there was sufficient evidence before the Court of Claims upon which it could reasonably conclude that Gilchrist was qualified as well by reason of his knowledge of construction contract law. The court in its order of March 8, 1982 found:

"6) Mr. Gilchrist worked as assistant credit manager for a large fabricator of miscellaneous iron. In this position, his duties included review of construction contracts, change orders, mechanics liens and the expediting of the delivery of materials to job sites. In addition, Mr. Gilchrist worked for a law firm which specialized in government procurement and construction law."

It was shown that Gilchrist was not a member of the construction industry panel of the American Arbitration Association. However, such fact does not preclude a finding that he was knowledgeable about construction contract law. The statute did not mandate, but *suggested,* that membership on the construction industry panel *may* be evidence of an individual's knowledge. Additionally, it is apparent that R.C. 2743.03(C)(2) did not require the appointment of an expert, but rather, an informed person, knowledgeable of construction contract law who is capable of hearing the evidence, weighing credibility, and sitting as a fair and impartial trier of fact.

Upon thorough review of attorney Gilchrist's qualifications, this court finds sufficient basis existed for his appointment as the referee in this matter.

Conn's second principal contention regarding the referee encompasses three claims, the first of which concerns the referee's failure to make findings of fact relating to the seven claims set forth in Conn's complaint. Also, Conn maintains the referee failed to consider both all the evidence and its post-trial brief.

Civ. R. 53(E)(1) requires the referee to prepare a report upon the matters submitted to him. Further, it has been held that a referee's report must:

"* * * contain a statement of facts forming the basis for the referee's recommendation to the trial judge. Absent such a statement, the court cannot adopt the recommendation because it lacks the necessary information to make the required independent analysis of the case." *Nolte* v. *Nolte* (1978), 60 Ohio App. 2d 227 [14 O.O.3d 215], paragraph one of the syllabus.

As stated in *Nolte,* referees serve the court in an advisory capacity and have no authority to render final judgments affecting the rights of parties. Accordingly, Civ. R. 53(E)(2) provides:

"* * * [T]he court may: adopt, reject or modify the report; hear additional evidence; return the report to the referee with instructions; or hear the matter itself."

In addition, Civ. R. 53(E)(5) states that a referee's report becomes effective and binding "only when approved and entered as a matter of record by the court." See, also, *Berry* v. *Berry* (1977), 50 Ohio App. 2d 137 [4 O.O.3d 104]; *Wolff* v. *Kreiger* (1976), 48 Ohio App. 2d 153 [2 O.O. 3d 118].

On April 12, 1982, the referee filed his report. In accordance with Civ. R. 53(E)(2), the Court of Claims in its entry of May 11, 1982, returned the report to the referee for reconsideration. On May 20, 1982, the referee resubmitted his report, incorporating therein the following:

" 'Pursuant to Civil Rule 53 and the March 5, 1982, Order of Reference and the May 11, 1982, Entry remanding the April 12, 1982, Report To Referee, the

Referee hereby reports these finds [*sic*] of fact and recommendations based on the evidence presented and the argument of the parties including the post-trial briefs of the parties.' ''

In its July 12, 1982 opinion, the Court of Claims approved and adopted the referee's report as resubmitted. Additionally, the court itself independently reviewed the evidence and supplemented the referee's findings of fact in its twenty-one page opinion and judgment.

In his report, the referee made general findings of fact in his introduction remarks and specific findings (although summary in form) respecting the separate counts on Conn's complaint. Based on these findings, the referee recommended the court deny certain of Conn's claims and deferred to the court on two claims, labeled as "questions for the court." Given the *Nolte* standard, *supra,* we hold that this referee's report contained a sufficient factual basis to enable the Court of Claims to independently determine the issues involved.

Regarding the fact that the referee initially did not consider Conn's post-trial brief before submitting his report to the court, we note that Conn filed its post-trial brief on April 12, 1982, the same day that the referee filed his report. On May 11, 1982, the Court of Claims ordered the referee to "reconsider" his report and resubmit it, following careful consideration of the parties' post-trial briefs. Since the referee was ordered to consider Conn's post-trial brief, and in fact did so, Conn was not prejudiced by the actions of the referee. The fact that the referee did not thereafter make any "substantive" changes does not diminish the validity of the report or establish any prejudice to Conn.

Regarding Conn's claim that the referee did not consider all the evidence,

the court notes the following excerpt from page two of the referee's report:

"* * * Both counsel made numerous objections to the introduction of testimony and documents. Over the objection of opposing counsel and in some instances pursuant to a conditional ruling, the testimony and document objected to were made part of the record. Referee acknowledges that this material was reviewed and found to be either irrelevant, duplicative, or simply not considered. This report will present the Court with only those essential facts necessary to resolve the issues presented."

It is clear that the referee did, indeed, *review* all of the evidence presented. The referee clearly has the authority to admit *and exclude* evidence. Civ. R. 53(C) provides:

"* * * [T]he referee has and shall exercise the power to regulate all proceedings in every hearing before him as if by the court * * *. He may summon and compel the attendance of witnesses and may require the production before him of evidence upon all matters embraced in the reference, including the production of all books, papers, vouchers, documents and writings applicable thereto. He may rule upon the admissibility of evidence unless otherwise directed by the order of reference * * *."

In this hearing, the referee by the court's order of March 5, 1982 was to have "the same power as a judge of the Court of Claims * * * [and] all the powers enumerated in Civil Rule 53." This order of reference also specified that the Rules of Evidence were to apply. Having ruled on the admissibility of evidence, it was also within the referee's discretion as trier of fact to determine the relative weight of such evidence. Further, it was within the referee's discretion to determine which items of evidence were irrelevant and duplicative. Evid. R. 401, 402 and 403.

Thus, the excerpt from the referee's report was addressed to the probative value of certain items of evidence—a matter within the referee's discretion. No abuse of that discretion having been shown, Conn's first assignment of error is denied. * * *

* * * In its third assignment of error, Conn insists the Court of Claims erred in denying its claim for reasonable costs actually incurred for painting work identified under the contract by reference numbers 130 and 131. These items were to include blast-cleaning, spot-priming, full-priming, and surface painting of the bridge's old and new structural steel. Conn asserts its subcontractor, Pantellis Painting Company, partially performed these items prior to the contract's termination, resulting in actual costs of $15,000. Conn maintains the Court of Claims applied the wrong legal standard by using the "percentage of completion" method to calculate Conn's claims. Conn urges that, instead, the court should have looked to Conn's actual costs incurred in performing this work, represented by the records which Conn and Pantellis submitted, *i.e.*, payroll records, receipts, invoices, etc., for the costs of labor, materials, equipment, meals and lodging.

Most of the items in the contract were bid on a "unit price" basis. However, several reference numbers, most notably 130 and 131, which represent the painting claims, were lump-sum bid items. That is, if the contract had not been terminated, the contractor ostensibly would have been paid the entire lump sum. The total contract estimate for this painting work was $198,000. Conn claims it incurred expenses of $85,409.63 in performing the work and that ODOT has not yet paid $16,354.67.

ODOT claims Conn was bound by the terms of the contract to accept payment for an altered or decreased quantity under the original price terms, as provided in Sections 104.02 and 109.03 of the Specifications rather than actual costs. ODOT contends the proper measure of damages was properly based on the percentage of work completed.

However, this was not a case in which the contract was breached, nor was work materially altered with respect to reference items 130 and 131, prior to termination. The contract specifications designate how payment was to have been made for portions of the contract completed prior to termination. See Section 108.031 of the Construction and Material Specifications. See, also, R.C. 5525.14.

Section 108.031 authorizes the director to "cancel or terminate the contract for the convenience of the Department" and to compensate the contractor for added expense resulting therefrom. ODOT's right to terminate the contract is governed as well by R.C. 5525.14, which provides:

"The director may, by written instruction to the contractor, decrease or cancel the quantity of any item or portions of a contract, and the director shall authorize payment to the contractor for the *reasonable cost incurred,* in connection with such item or portions, prior to the date of such decrease or cancellation made by order of the director." (Emphasis added.)

These specifications, incorporated by reference as terms of the parties' contract, thus provide the controlling standard by which expenses may be allowed. These terms establish a discretionary standard to be exercised by the Director of ODOT regarding allowances to a contractor for costs. Federal standards are irrelevant.

Where parties have contracted as to the measure of damages, review by this court is limited to consideration of whether the director abused his discretion in determining the reasonableness of the compensation to be provided.

In September and October 1978, ODOT's project engineer, Marshall Baum, spent several days examining the painting on the bridge to determine the percentage of completion. In October 1978, Pantellis Painting submitted its written estimate of work completed. In the Spring of 1979, Baum again reviewed the entire bridge, comparing the Pantellis estimate to the work actually performed. By dividing the bridge into component parts, and assigning a percentage of completion to each section, Baum arrived at his own estimate. In the Fall of 1979, ODOT structural engineer Harold Schultz, comparing Baum's detailed calculations to the contractor's original cost estimates determined that $60,046 represented fair and reasonable payment for the painting work performed.

The Court of Claims held that Conn was entitled to the "percentage of the contract price equal to the percentage of work completed." We find the Court of Claims applied the incorrect standard for this claim. Upon termination, the proper measure for completed work under this contract is the contractor's reasonable costs incurred. See Section 108.031; R.C. 5525.14. Conn's third assignment of error is sustained. * * *

* * * The Court of Claims' denial of Conn's painting claim for reasonable costs incurred is reversed and this issue is remanded to the trial court for determination of the amount which is recoverable by Conn under Section 108.031. In all other respects, the judgment of the Court of Claims is affirmed.

*Judgment affirmed in part, reversed in part and cause remanded.*

McCORMAC and NORRIS, JJ., concur.

BROGAN, J., of the Second Appellate District, sitting by assignment in the Tenth Appellate District.