JOURNAL ENTRY AND OPINION
{¶ 1} Upon reconsideration, this opinion is the court's final, journalized decision in this appeal. The court's Announcement of Decision, previously released on June 19, 2008, is hereby vacated.
 {¶ 2} Defendant-appellant Ian Abrams and defendant-appellant The Scrap Yard, LLC ("Cleveland Scrap") appeal the decision of the Cleveland Housing Court ("Housing Court"). Having reviewed the arguments of the parties and the pertinent law, we reverse and remand.
 I {¶ 3} According to the case, on April 25, 2006 the city of Cleveland ("city") filed a complaint for injunctive relief. The city's complaint sought to enjoin Ian Abrams and Cleveland Scrap from operating a scrap business on the property located at 3018 East 55th Street in Cleveland, Ohio. The city's complaint alleged various zoning code violations on the part of appellants. The city alleged violations of numerous sections of the Cleveland Codified Ordinances, specifically Cleveland Codified Ordinances 327.02(c), 676.02, 345.02, 347.06(d), 3105.01(a), and 3101.10(E).
 {¶ 4} After preliminary negotiations, the parties agreed that the appellants (Abrams on behalf of Cleveland Scrap) would apply to the city and appeal to the Board of Zoning Appeals for three variances at the property. The three variances were: 1) to expand the use of the scrap yard into the residence-industry area; 2) to *Page 2 
expand the use of the scrap yard to the hilltop and for auto wrecking at the property; and 3) to change the use of adjacent land from automobile storage to scrap yard and auto wrecking use.
 {¶ 5} In June 2006, an agreed judgment entry was submitted to the Housing Court, in which the parties agreed that Abrams and Cleveland Scrap would continue operating at the property pending the Board of Zoning Appeals' hearing, would keep the residence-industry area of the property clear of all containers, scrap, and debris, and would maintain Sweeney Road clear of trash and debris while the case was pending.
 {¶ 6} On July 17, 2006, the Board of Zoning Appeals held a public hearing in which it heard the variance requests by Abrams. After the public hearing, the Board of Zoning Appeals denied all three variance requests. On September 11, 2006, the Housing Court held a preliminary injunction hearing on the city's complaint. On September 14, 2006, the Housing Court issued a judgment entry and order granting a preliminary injunction against Cleveland Scrap. This order, in effect, ceased the operation of the scrap yard on an expanded portion of the property commonly referred to as "the hilltop." The Housing Court denied the city's request for an injunction against Ian Abrams.
 {¶ 7} On September 19, 2006, Abrams and Cleveland Scrap filed their notice of appeal and praecipe in Case No. 88766 and cited R.C. 2505.02(B)(4) as the basis for their appeal. On September 27, 2006, the parties and their counsel met at the *Page 3 
property to measure and document the approximate height and volume of the scrap piles as ordered by the court in its injunction order. On September 28, 2006, Abrams and Cleveland Scrap filed objections to the magistrate's decision with the lower court. On October 10, 2006, the city filed its response to the objections and made one objection to a conclusion of law in the magistrate's decision. On October 13, 2006, the trial court found that it lacked jurisdiction to rule on any objections to the magistrate's decision and ordered the clerk to transmit the file to this court.
 {¶ 8} On October 17, 2006, Abrams and Cleveland Scrap filed a motion to remand with this court requesting that this court remand the previously filed appeal case to the lower court to rule on the objections to the magistrate's decision. On October 26, 2006, the city filed its response in this court, objected to any remand of the case to the lower court, and requested that this court hear and determine the merits of the first appeal.
 {¶ 9} On October 27, 2006, Abrams and Cleveland Scrap served the city with a motion for relief from judgment filed with the Housing Court. On that same day, the Housing Court served the parties with the App. R. 9(C) statement of the testimony and evidence presented at the injunction hearing, and Cleveland Scrap filed a second motion to remand with this court requesting that it remand the first appeal case to the Housing Court to rule on the motion for relief from judgment. On November 6, 2006, the city filed its response to Cleveland Scrap's motion to remand for a Civ. R. 60(B) ruling in this court and again objected to any remand of the case. *Page 4 
On November 27, 2006, this court, sua sponte, dismissed the first appeal for not being a final appealable order. Neither party appealed that decision. On January 3, 2007, the Housing Court overruled the objections to the magistrate's decision and set a pretrial conference for January 29, 2007.
 {¶ 10} On January 24, 2007, counsel for the city sent a letter to counsel for Cleveland Scrap which requested compliance with the injunction order. On January 29, 2007, a pretrial conference was held in Housing Court with all counsel present, and a discovery schedule was set. On March 21, 2007, the city filed a motion to show cause as to why Cleveland Scrap should not be held in contempt for failing to comply with the outstanding court's injunction order.
 {¶ 11} On April 23, 2007, the Housing Court held a show cause hearing in which Cleveland Scrap was permitted to be heard and present any testimony and evidence in defense of the city's contempt allegations. On April 30, 2007, the Housing Court issued a contempt order which gave Cleveland Scrap an opportunity to purge itself of the contempt finding and set a further hearing for May 14, 2007, on the contempt. On May 14, 2007, the Housing Court held a status conference. On May 17, 2007, the Housing Court issued its contempt order with sanctions, which was journalized on May 22, 2007.
 {¶ 12} On May 23, 2007, Cleveland Scrap filed its notices of appeal in Housing Court and at that same time also filed in Housing Court its motion for immediate stay of proceedings and to set bond. On May 30, 2007, Abrams filed his notice of appeal *Page 5 
in the Housing Court. This court consolidated the separately filed appeals for disposition. The Housing Court ruled on Cleveland Scrap's motion to set bond and granted a stay of execution upon the posting of a supersedeas bond of $8.5 million. On July 11, 2007, this court lowered the bond for a stay of execution upon the posting of bond in the amount of $1 million. Cleveland Scrap never posted any bond. On August 27, 2007, Abrams and Cleveland Scrap filed their appellant briefs.
 {¶ 13} Ian Abrams is the current owner of the property lots located at 3018 East 55th Street, Cleveland, which are identified as permanent parcel numbers 123-13-001 and 123-13-005. Cleveland Scrap is the tenant which has operated a junk and scrap yard at the property since 2002.
 {¶ 14} Abrams was the person in control of both the property and Cleveland Scrap at the time the city's complaint was filed until October 2006, after the preliminary injunction hearing was held, when the scrap yard company was sold to Allen Youngman. Abrams purchased the original scrap yard areas sometime in the late 1960's. Abrams then acquired the back portion of the original parcel (non-hilltop area) in approximately 1975, which had previously been used as a furniture warehouse. He then acquired the hilltop area of the property sometime in the 1980's from the railroad, and the deed for the hilltop was recorded for the area of the property in 1985. Prior to purchasing the hilltop area, it was used by the railroad for storage and repairs.
 II *Page 6 {¶ 15} Appellant Ian Abrams puts forth nine assignments of error in his brief, and appellant Cleveland Scrap puts forth four assignments of error as well. Abrams' assignments of error provide the following:
 {¶ 16} I. "The trial court erred by ordering, at JE, 9/14/06, par. 1, the removal of `all junk vehicles . . . from the scrapping area,'
resulting in the complete cessation of the processing into scrap metal of either automobiles or the parts thereof, which conduct, per se, establishes neither auto wrecking, nor renders the property an automobile wrecking yard unless performed to the degree or intensity defined by the Zoning Code."
 {¶ 17} II. "The trial court erred by ordering Appellant Cleveland Scrap to remove a `crude ramp made of debris by a gate in the fence' [JE, 4/30/07, p. 5; JE, 9/14/06, par. 5] in order to maintain `vacated' Sweeney Avenue free of debris."
 {¶ 18} III. "The trial court erred by enforcing unconstitutionally vague, and/or ambiguous fencing standards, and by further ordering that Appellant Cleveland Scrap `shall . . modify or outfit [the fencing] to make it non-transparent,' PI, par. 3, because there is no applicable ordinance by which the term `non-transparent,' is unmodified by the phrase, `slightly solid.'"
 {¶ 19} IV. "The trial court erred at JE, 9/15/06, par. 1, 6, 7, 8, by requiring a certificate of occupancy for the outdoor use, outdoor expansion of use, and /or the outdoor change of use because the Cod. Ord. do not authorize the issuance of a COO therefor." *Page 7 
 {¶ 20} V. "The trial court erred at JE, 9/14/06, par. 7 8, by retroactively applying to Appellants' lawful, prior, nonconforming use of the property, the 3 feet over fence height scrap pile limitation of _347.06(d), eff. 6-4-70, and by applying said 3 feet limitation without regard to topography."
 {¶ 21} VI. "The preliminary injunction cannot be enforced because Plaintiff's conduct herein sets the bar for `unclean hands.'"
 {¶ 22} VII. "The trial court erred at JE, 9/14/06, par. 2, by ordering the cessation of the storage of containers on the so-called `footbridge' portion of the property zoned residence industry."
 {¶ 23} VIII. "The trial court exceeded its authority by issuing and enforcing a preliminary injunction which goes beyond maintaining the status quo by ordering affirmative relief."
 {¶ 24} IX. "The trial court erred by denying Abrams standing to participate in the Cleveland Scrap contempt hearing."
 {¶ 25} In addition to Abrams' assignments of error above, appellant Cleveland Scrap puts forth four assignments of error of its own. They are as follows:
 {¶ 26} I. "The lower court erred when it found The Scrap Yard, LLC in contempt of court of its September 14, 2006 preliminary injunction order because the order was vague and not specific enough to enforce scrap pile height limitations and prohibit operations on the hilltop." *Page 8 
 {¶ 27} II. "The lower court erred when it found The Scrap Yard, LLC in contempt of court for violating its September 14, 2006 preliminary injunction order for failing to adhere to city of Cleveland codified ordinances imposing junk pile height limitations and screening requirements."
 {¶ 28} III. "The lower court erred when it found The Scrap Yard, LLC in contempt of court of its September 14, 2006 preliminary injunction order when it determined that the operations on the hilltop should cease."
 {¶ 29} IV. "The lower court erred when it found The Scrap Yard, LLC in contempt of court for violating its September 14, 2006 preliminary injunction order without a finding of clear and convincing evidence that it was in violation of any city of Cleveland codified ordinances."
 III {¶ 30} Cleveland Scrap's first assignment of error states that the preliminary injunction order was vague and not specific enough to enforce scrap pile height limitations and prohibit operations on the hilltop. Specifically, Cleveland Scrap argues that the lower court erred in finding it in contempt of the preliminary injunction because it does not state with mathematical precision how to enforce the pile height limits or define the hilltop area. Cleveland Scrap further argues that the injunction order is not specific in terms and violates Civ. R. 65(D). Civ. R. 65(D) states:
 "D) Form and scope of restraining order or injunction. *Page 9 Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding upon the parties to the action, their officers, agents, servants, employees, attorneys and those persons in active concert or participation with them who receive actual notice of the order whether by personal service or otherwise." (Emphasis added.)
 {¶ 31} The purpose of Civ. R. 65(D) is to "prevent uncertainty and confusion on the part of those faced with injunctive orders and to avoid the possible founding of a contempt citation on a decree too vague to be understood." Schmidt v. Lessard (1974), 414 U.S. 473, 476.
 {¶ 32} Civ. R. 65(D) provides that every order granting an injunction and every restraining order shall set forth the reasons for its issuance, shall be specific in terms, shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained. This rule is identical to the federal rule. The decree sought to be enforced must not be too vague to be understood. State ex rel. Fraternal Order of Police, Captain John C.Post Lodge No. 44 v. Dayton (1977), 49 Ohio St.2d 219. *Page 10 
 {¶ 33} The trial court's preliminary injunction order in this case is vague and unclear. Indeed, Cleveland Scrap filed several motions requesting modification or clarification of various items. Cleveland Scrap filed a "motion for clarification," an "additional request for clarification," a "second additional request for clarification," and a "request for modification of the order."[1]
 {¶ 34} The preliminary injunction order states that Cleveland Scrap "shall have decreased the height of the piles on the side covered by the certificate of occupancy by 20%. These reductions shall continue at a rate of 20% for every 14 days, until such time as the height of the piles on the section covered by the certificate of occupancy is no more than three feet higher than the fence, and the piles on the side not covered by the certificate of occupancy are gone, or until this order is modified by the court."
 {¶ 35} The order does not specifically identify the area covered by the certificate of occupancy and it is not clear how the piles of scrap should be measured. The order requiring that Cleveland Scrap decrease the height of the scrap piles by 20 percent until the piles are not more than three feet higher than the fence is unclear. The order does not specify whether Cleveland Scrap should *Page 11 
measure the 20 percent reduction against the original pile height or against the pile height after subsequent reductions.
 {¶ 36} It is not clear at what part of the fence any given pile of scrap should be measured against. Additionally, the order does not address how the piles of scrap located on the hilltop area of the property should be measured in light of the fact that the hilltop area, when viewed from the corner of East 55th Street and Sweeney Avenue, already extends far above any suggested height limitation tied to fencing on the property, and the hilltop alone, without any piles of scrap, could violate the preliminary injunction order. Indeed, the trial court stated that the junk pile height ordinance lacks mathematical precision.
 {¶ 37} Moreover, neither the preliminary injunction order or the contempt order provides a description of the area covered by the certificate of occupancy or the hilltop area. There are no dimensions mentioned, no legal description contained therein or map included depicting the area covered by the certificate of occupancy or the hilltop.
 {¶ 38} If a contempt order is premised on a party's failure to obey an order of the court, then the order must be clear and definite, unambiguous, and not subject to dual interpretations, and the contemnor must have knowledge of the order. This rationale must also be applied to the actual order of contempt. In order for parties to comply with an order of contempt, they must be able to clearly understand the *Page 12 
penalty imposed. Tornstrom v. DeMarco, Cuyahoga App. No. 79521, 2002-Ohio-1102.
 {¶ 39} The court order in the case at bar is confusing, vague, ambiguous, and subject to more than one interpretation. Moreover, the details regarding the enforcement of the scrap piles' heights and areas covered by the certificate of occupancy are not specific. Accordingly, based on the evidence presented, we find the lower court's preliminary injunction and contempt orders to be improper. The injunction was not specific in its terms and violated Civ. R. 65(D). Accordingly, Cleveland Scrap's first assignment of error is sustained.
 {¶ 40} Appellant Cleveland Scrap argues in its second assignment of error that the lower court erred when it found Cleveland Scrap in contempt for failing to adhere to Cleveland ordinances imposing junk pile height limitations and screening requirements.
 {¶ 41} As previously stated, we found the trial court's preliminary injunction order to be vague and unclear. More specifically, we find that the landowner, Cleveland Scrap, was maintaining a prior nonconforming use.
 {¶ 42} "The right to continue to use one's property in a lawful business and in a manner which does not constitute a nuisance and which was lawful at the time such business was established is within the protection of Section 1, Article XIV, Amendments, United States Constitution, and Section 16, Article I of the Ohio Constitution, providing that no person shall be deprived of life, liberty or property *Page 13 
without due process of law" (emphasis in original) (citing Akron v.Chapman (1953), 160 Ohio St. 382).
 {¶ 43} This constitutional protection has been codified in Ohio law in R.C. 713.15, which states:
 "The lawful use of any dwelling, building, or structure and of any land or premises, as existing and lawful at the time of enacting a zoning ordinance or an amendment to the ordinance, may be continued, although such use does not conform with the provisions of such ordinance or amendment, but if any such nonconforming use is voluntarily discontinued for two years or more, or for a period of not less than six months but not more than two years that a municipal corporation otherwise provides by ordinance, any future use of such land shall be in conformity with sections 713.01 to 713.15 of the Revised Code."
 {¶ 44} Prior nonconforming uses are also recognized by R.C. 519.19
which provides, in pertinent part, that "[t]he lawful use of any * * * land or premises, as existing and lawful at the time of enactment of a zoning resolution or amendment thereto, may be continued, although the use does not conform with the resolution or amendment." State v.Volbert, Allen App. Nos. 1-01-169, 1-01-170, 1-01-171 and 1-01-172, 2002-Ohio-2763.
 {¶ 45} A landowner claiming a valid nonconforming use has the burden of proving two requirements. Initially, the use must have been in existence prior to the enactment of the prohibitory land use regulation.Dublin v. Finkes (1992), 83 Ohio App.3d 687, 690. Further, the land use in question must have been lawful at the time the use was established.Pschesang v. Terrace Park (1983), 5 Ohio St.3d 47, 5 *Page 14 
Ohio B. 104, 448 N.E.2d 1164, syllabus. "Stated another way, the use in question must have been in full accordance with all applicable land use regulations in effect when the activity was begun." Dublin,83 Ohio App.3d at 690. A use that was not permitted by the applicable zoning ordinance at the time the use was established does not constitute a nonconforming use. Pschesang, 5 Ohio St.3d 47 at syllabus. Also, see,Belich v. City of Olmsted Falls, Cuyahoga App. Nos. 84537 and 84807, 2005-Ohio-190.
 {¶ 46} Here, the use of Cleveland Scrap's property as a scrap yard predates any city of Cleveland ordinance imposing screening or junk pile height limitations. The city is seeking to enforce a junk height requirement against Cleveland Scrap as set forth in the city's Ordinance No. 407-70, passed 6-1-70 and effective 6-4-70, which states:
 "Section 347.06(d) — Height of Junk. In any use district allowing junk or wrecking yards, the storage of such junk or used material shall not be piled higher than three feet above the height of the wall or fence enclosing the yard, provided that at any point closer than five feet, the junk or used material shall not be piled above the heights of the wall or fence."
 {¶ 47} The city is also seeking to enforce a screening requirement against Cleveland Scrap, specifically Ordinance No. 1555-A-90, passed 5-13-91 and effective 5-22-91. The ordinance provides the following:
 "Section 676.13(a) — Screening of Junk Yards. Every junk dealer who stores junk in a junk yard shall provide visual screening for the said junk yard achieving one hundred percent (100%) year-round opacity from all directions and of sufficient height, not less *Page 15 than seven (7) feet, to conceal the junk or other merchandise from view from the ground floor level of adjoining properties and from the street."
 {¶ 48} Accordingly, the junk height limitations became effective on June 4, 1970, and the screening requirements were effective on May 22, 1991.
 {¶ 49} A review of the history of the property records, however, demonstrates that the Sands Realty Company purchased Permanent Parcel No. 123-13-01, the lower parcel, in 1916. In addition, Sands Realty applied for a variance from a 125-foot set back in 1940, which documented the use of the property at that time as a scrap iron yard. The variance was granted per Calendar 40-176 on June 17, 1940 for subplots 35-42. In 1942, a similar request for a variance was made, but it was made to include the entire tract having a frontage of 125 feet along East 55th Street and extending westward about 453 feet along the south side of Sweeney Avenue. The approval was given per Calendar 42-151 on May 18, 1942.
 {¶ 50} In 1979, the Sands Realty Company transferred the lower parcel, which was being utilized for scrap yard purposes, to Abrams. Furthermore, Abrams had personal knowledge that the land has been continuously used as a scrap yard dating back to the 1960's.[2]
 {¶ 51} Cleveland Scrap's property was zoned as a "first industrial district" in accordance with City of Cleveland Code _1281-7 at the time that the Sands Realty *Page 16 
Company acquired the property.[3] City of Cleveland Code _1281-7(a) authorized all uses that could properly take place in a commercial district to take place in any building or premises located in a first industrial district. City of Cleveland Code _ 1281-6(b)(2), governing commercial districts, authorized any building or premises to be used for the storage in bulk or warehouse of, inter alia, metals. Therefore, the 1929 city code authorized Cleveland Scrap's property to be used as scrap yard.
 {¶ 52} In addition, the Erie Lackawanna Railway Company purchased Permanent Parcel No. 123-13-05, the upper parcel, in 1941 and began using the property for scrap yard purposes, including the hand-loading into railroad cars of scrap iron purchased by the scrap yard operation. L. Sands, on behalf of the Sands Realty Company, stated in 1940 before the Cleveland Board of Zoning Appeals as follows: "* * * the operator intends to buy scrap iron and load it onto railroad cars by hand for delivery." The use of the upper parcel for scrap yard purposes is also evidenced by the railroad tracks located on the upper parcel which can be seen on the relevant plat maps. The Erie Lackawanna Railway Company transferred the *Page 17 
upper parcel, which was utilized to transport scrap metal to the railroad cars, to Consolidated Rail Corporation in 1979, and then to Abrams in 1985. Abrams has continued to utilize this parcel for scrap yard purposes since acquiring the property.
 {¶ 53} It is clear from the evidence that neither parcel at issue is subject to the aesthetic screening requirements enacted in 1991. In addition, the property has been used as a scrap yard since the early 1900's on the lower parcel, and it is, therefore, exempt from the junk pile height limitations. Although the upper parcel may not have been exclusively used as a scrap yard until the 1980's, it was used, prior to 1970, to transport scrap metals to the railroad for further transportation to an end user. In addition, the 1929 city code authorized the extension of the use of the lower parcel as a scrap yard to the upper parcel.
 {¶ 54} Accordingly, neither the lower or upper parcel is subject to comply with the aesthetic junk pile height limitations enacted in 1970. Appellant's second assignment of error is sustained.
 {¶ 55} Appellant argues in his third assignment of error that the lower court erred when it found the Cleveland Scrap in contempt of court and determined that the operations on the hilltop should cease. As previously stated, we found the trial court's contempt order to be vague and unclear. The contempt order constitutes an abuse of discretion here because it is based on a preliminary injunction order which fails to acknowledge the permission granted by the 2001 building permit. The 2001 building permit authorized the use of the entire property measuring 7.6 acres as a *Page 18 
scrap metal yard. Accordingly, any findings or arguments to the contrary are improper.
 {¶ 56} Moreover, the contempt order is based upon a preliminary injunction order that incorrectly requires Cleveland Scrap to obtain a certificate of occupancy. A certificate of occupancy is not required in this case because there have been no changes of the uses on the property. Ordinance No. 3105.10(C)(1) identifies requirements for certificates of occupancy for changes in uses. In this case, the use of the property in question has not changed since the early 1940's.[4] In addition, a review of the city's records demonstrates that a certificate of occupancy was issued for a scrap yard on April 7, 1992 and is known as CO. No. 3793. The city's records also do not indicate an expiration date for the permit or that it has been revoked or invalidated.
 {¶ 57} Accordingly, appellants' third assignment of error is sustained.
 {¶ 58} We find that Cleveland Scrap is currently maintaining a prior nonconforming use on the property. A review of the evidence demonstrates that a certificate of occupancy was issued on April 7, 1992 and is known as certificate of occupancy No. 3793. In addition, the evidence demonstrates that permission was *Page 19 
granted by a 2001 building permit for use of the entire property, measuring 7.6 acres, as a scrap metal yard.
 {¶ 59} The trial court is hereby ordered to conduct a hearing to act in full compliance with this court's decision and to further review the legal merits underlying the first preliminary injunction order. Cleveland Scrap was unable to clearly understand the preliminary injunction order. The contempt order is based on the unclear and ambiguous preliminary injunction order.
 {¶ 60} Accordingly, the contempt order and the underlying preliminary injunction order are improper and invalidated in their entirety, and this case is remanded back to the lower court for further proceedings in accordance with this decision.
 {¶ 61} Based on the disposition of Cleveland Scrap's first three assignments of error, the remaining assignment of errors are moot. *Page 20 
 {¶ 62} Judgment reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is ordered that appellants recover from appellee costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY EILEEN KILBANE, J., CONCURS;
MELODY J. STEWART, J., DISSENTS WITH SEPARATE DISSENTING OPINION
[1] 2/27/07 Motion for clarification of preliminary injunction filed by defendants; 5/30/07 defendants' notice of compliance filed; 5/31/07 defendants' notice of compliance and motion for reduction of bond; 6/1/07 defendants' additional request for clarification; 6/1/07 defendants' second additional request for clarification; 6/1/07 defendants' request for modification of order filed.
[2] See depo. of Greg Abrams, Mar.14, 2007, pp. 21-22.
[3] See Abrams' document production/trial exhibit list, filed May 22, 2007, Tab 1 (C). The property, excluding the footbridge area, continues to be zoned general industrial.
[4] Other than the issue of auto wrecking, the use of the property has not changed since the early 1940's. Because auto wrecking was not addressed by the contempt order, it is not relevant as it relates to the certificate of occupancy. Although appellant argues that auto wrecking is a permitted use, and even if it were at issue here, it would not require a certificate of occupancy because it would not result in a reclassification of the property under a different occupancy or use classification.